JOURNAL ENTRY AND OPINION
Lloyd Lykes (Mr. Lykes) appeals from a judgment of the Juvenile Court, which terminated his parental rights and granted permanent custody of his son, Lloyd Satterwhite (Lloyd), to the Cuyahoga County Department of Children and Family Services (CCDCFS). Mr. Lykes complains on appeal that the court should not have proceeded to hearing without Lloyd's mother, Diane Satterwhite; that he was denied due process because Lloyd's paternal relatives were not considered for placement; and that CCDCFS failed to prove grounds for permanent custody by clear and convincing evidence. After reviewing the record before us, we affirm the decision of the trial court.
The partial record supplied to us on appeal reveals that in 1993, the court removed Angelica, Anthony and Lloyd Satterwhite from the custody of their mother, Diane Satterwhite, due to her chemical dependency and placed them in the care of their maternal aunt who died in 1996. Then, on May 23, 1997, CCDCFS filed a complaint alleging neglect. The Juvenile Court adjudicated these children neglected and granted CCDCFS temporary custody who, in turn, placed them with a family friend, Ardelia Knight. CCDCFS later filed a motion to modify temporary to permanent custody. Thereafter, Mr. Lykes was named as Lloyd's father.
Since 1996, CCDCFS attempted on more than one occasion to locate Mr. Lykes without success. In or around December 1998, CCDCFS finally located Mr. Lykes through the prison hotline number. Mr. Lykes had been imprisoned since early 1995 or late 1994. On seven occasions in late 1995, Mr. Lykes sent money from prison to the caretaker for Lloyd and has sent him a few cards. Lloyd informed the assigned social worker that he had never seen his father and did not wish visitation. Mr. Lykes was released from prison in November 1999 and his whereabouts at this time are again unknown.
The record further reveals that Ms. Satterwhite had a case plan which required her to obtain stable housing, attend drug and alcohol counseling and complete parenting classes, which she followed until she tested positive for cocaine in September 1998 and disappeared. Mr. Lykes was never included as part of the risk assessments or safety plans because he was not in the home and his whereabouts were unknown.
The original social worker, Mr. Dodge, testified that he had received a letter from Mr. Lykes who expressed interest in obtaining custody of Lloyd. At first, Mr. Lykes told Mr. Dodge that none of his family members was in a position to care for Lloyd. Subsequently, he named two relatives as potential candidates for Lloyd's placement: his mother and a Roberta Patterson. CCDCFS investigated both as possible placements. CCDCFS determined both to be unsuitable after being informed that Mr. Lykes' mother could not care for Lloyd even on a temporary basis and that Ms. Patterson did not even have custody of her own children. Mr. Lykes was not an option for placement due to his incarceration.
On June 22, 1999, both Mr. Lykes and the mother, Diane Satterwhite, received notice of the permanent custody hearing scheduled for August 3, 1999 at 10:00 a.m. Ms. Satterwhite acknowledged receipt by placing her signature on the notice. (R. 64). On June 25, 1999, the court signed a transport order for Mr. Lykes to attend the hearing. (R. 65).
Mr. Lykes attended the hearing on August 3, 1999 and testified. The transcript of Mr. Lykes' testimony has not been provided to us on appeal. On October 27, 2000, we sua sponte remanded this case for the purposes of obtaining a complete record or to obtain an App.R. 9(C) statement. On June 11, 2001, through his motion to reinstate appeal, we were informed that Mr. Lykes could not provide an App.R. 9(C) statement as previously indicated because he had apparently moved and did not inform [his] counsel of his whereabouts.
Ms. Satterwhite was incarcerated at the time of the permanent custody hearing. Although she knew the name of her attorney and was aware that a hearing was approaching, she made no effort to contact her attorney. Ms. Satterwhite sent an inmate request form to CCDCFS requesting the last name of her social worker and, without identifying any specific location, advised that she was incarcerated. The testimony in the record discloses that CCDCFS determined Ms. Satterwhite to be unsuitable to maintain custody of Lloyd due to her history of substance abuse, lack of safe, stable and suitable housing and failure to complete required drug and parenting programs.
Since 1996, Lloyd and his siblings have been in the same foster home, have bonded with that family, and continue to do well. Based upon the evidence and testimony, the court granted CCDCFS' motion for permanent custody. Mr. Lykes now appeals and sets forth three assignments of error for our review. They state:
 I. THE TRIAL COURT ABUSED ITS DISCRETION BY PROCEEDING TO TRIAL WITHOUT THE PRESENCE OF DIANE SATTERWHITE WHOM THE APPELLEE KNEW TO BE INCARCERATED ALL TO THE PREJUDICE OF APPELLANT LLOYD SATTERWHITE.
 II. APPELLANT WAS DENIED DUE PROCESS OF LAW, GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS, WHEN THE TRIAL COURT FAILED TO CONSIDER OPTIONS SHORT OF PERMANENT CUSTODY WHERE THE APPELLEE CCDCFS ADMITTED THAT IT FAILED TO INVESTIGATE PATERNAL RELATIVES OF LLOYD SATTERWHITE FOR PLACEMENT.
 III. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF LLOYD SATTERWHITE TO APPELLEE BECAUSE APPELLEE FAILED TO PROVE STATUTORY GROUNDS FOR PERMANENT CUSTODY BY CLEAR AND CONVINCING EVIDENCE.
We address the second and third assignments of error first, and together, because they are resolved on the same ground. Both of these assignments of error compel an examination of the transcript. The trial court found that the allegations of the motion [for permanent custody] ha[d] been proven by clear and convincing evidence. (R. 70). The court explicitly based this determination upon evidence and testimony that it had heard. Id.
This court recently articulated the standard of review employed by an appellate court reviewing a decision granting permanent custody to a child services agency as follows:
 While App.R. 12 grants an appellate court the power to reverse trial court judgments and enter those judgments that the court should have rendered, it is inappropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody.
 Miller v. Miller (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties [*15] concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. Id., citing Trickey v. Trickey (1952), 158 Ohio St. 9, 13, 106 N.E.2d 772.
 In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Accordingly, the trial court's determination in a custody proceeding is only subject to reversal upon a showing of an abuse of discretion. Dailey v. Dailey (1945), 146 Ohio St. 93, 64 N.E.2d 246; Trickey, supra.
 Hence, this reviewing court will not overturn a permanent custody order unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
In re Benevides (May 3, 2001), Cuyahoga App. No. 78204, unreported.
CCDCFS argues that Mr. Lykes' failure to provide a complete record on appeal binds us to presume the validity of the lower court's proceedings where the omitted portions of the transcript are necessary to a resolution of any assigned error(s). We agree.
While Mr. Lykes complains that the CCDCFS failed to present clear and convincing evidence to support an award of permanent custody, he presents us with an incomplete transcript on appeal. The portion missing from the transcript is Mr. Lykes' own testimony. Mr. Lykes was permitted leave to complete the record by virtue of an App.R. 9(C) statement and failed to do so. He has apparently neglected to notify and/or keep his counsel advised of his whereabouts which remain unknown. While Mr. Lykes presumably had no involvement in the disappearance of his testimony from the record, he bears some fault for failing to avail himself of the alternative means of completing the record. It is well settled that the duty to provide a transcript for appellate review falls upon the appellant. Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199.
We find that the portion of Mr. Lykes' testimony is necessary for resolution of assigned errors II and III. We do note, however, that the partial transcript that was supplied does contain competent, credible evidence that CCDCFS, in fact, investigated, and ruled out two of Lloyd's paternal relatives for possible placement. We were, however, unable to review Mr. Lykes' testimony which may have contested or refuted this fact. Under the circumstances, we have no choice but to presume the validity of the lower court's proceedings and, therefore, overrule the second and third assignments of error. Id.
Mr. Lykes argues in his first assignment of error that the court abused its discretion and prejudiced his case by proceeding without Ms. Satterwhite. In his brief, Mr. Lykes contends that he was prejudiced because Ms. Satterwhite may have been able to offer testimony that he made an effort to bond with his child. We find the suggestion of prejudice on this stated basis to be without merit since Mr. Lykes himself attended the hearing and testified on his own behalf. He, therefore, had the opportunity to offer his own testimony concerning any efforts he may have made to bond with his child.[1]
Further, Ms. Satterwhite received notice of the August 3, 1999 hearing and acknowledged same by her own signature. (R. 64). The trial court denied Ms. Satterwhite's counsel's request for a continuance. Mr. Lykes joined in objecting to this ruling. We can reverse this ruling only if we find that the trial court abused its discretion. State v. Unger (1981),67 Ohio St.2d 65, 67. In denying the continuance, the trial court considered evidence that Ms. Satterwhite knew of the hearing, knew the name of her attorney, yet never attempted to contact anyone to request a transport order to attend the hearing. Given this evidence, the trial court did not abuse its discretion in denying the request for a continuance.
Assignment of Error I is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas Juvenile Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and MICHAEL J. CORRIGAN, J., CONCUR.
[1] To the extent that we would be compelled to review Mr. Lykes' testimony to resolve his claims of prejudice, we are bound to overrule this assignment of error. Knapp, supra.